## Miller *v.* Tiedemann, Appellant.

*Negligence—Automobiles—Pedestrian—Customary street crossing—Traffic regulations—Contributory negligence.*

In an action to recover damages for the death of plaintiff's husband resulting from being struck by an automobile owned by defendant and operated by defendant's chauffeur, it appeared that plaintiff was struck while crossing a city street at a point which though not a street crossing was a usual and customary place for pedestrians to cross, with which fact defendant's chauffeur was acquainted. There was evidence to show that the chauffeur passed a wagon in front of him on the right instead of the left side as prescribed by the traffic regulations of the city and that the deceased was struck as the automobile emerged from the side of the wagon, and that neither the defendant's chauffeur nor the deceased were able to see each other until practically at the instant of the collision. *Held,* that the questions of defendant's negligence and the contributory negligence of the deceased were properly submitted to the jury and a verdict for the plaintiff was sustained.

Argued March 23, 1915. Appeal, No. 4, Jan. T., 1915, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Dec. T., 1912, No. 3118, on verdict for plaintiff in case of Genevieve G. Miller, Widow of John Miller, v. Ellen E. Tiedemann. Before Brown, C. J., Mestrezat, Elkin and Moschzisker, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before Barratt, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $5,000 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellant.

*F. S. Laws,* of *Lewis, Adler & Laws,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 19, 1915:

The plaintiff recovered a verdict for damages suffered through the death of her husband, who, on January 22, 1912, at two o'clock in the afternoon, was knocked down and killed by the defendant's automobile. Judgment was entered on the verdict and the defendant has appealed; she assigns for error the refusal to give binding instructions and the subsequent refusal of judgment non obstante veredicto in her favor.

Since the jury found for the plaintiff, the evidence must be looked at in the light most favorable to her, and whenever it is in conflict, so that either of two inferences or conclusions is possible, that which most strongly supports the verdict must be adopted. When the testimony is so viewed, these facts appear: Mr. Miller was struck by the defendant's automobile while he was in the act of crossing from the west to the east side of 5th street, about midway between Chestnut and Market streets, in the City of Philadelphia. A large building, known as The Philadelphia Bourse, is located at this point, on the east side of 5th street between Ludlow street, on the north, and Ranstead street, on the south. Ranstead street runs from 4th to 5th streets, and directly opposite its entrance into 5th street, running westward from the west side of that highway, is an alley called Crockett's Court. The roadway of 5th street, from Chestnut street to Ranstead Street, a distance of about 58 yards, is 26 feet wide, but immediately above Ranstead street, in front of The Bourse, this widens to 39 feet. A single line of car tracks is located in the center of 5th street, as of the width of 26 feet, and upon this line trolley cars run to the north. At the time of the accident, some wagons were standing on the west side of 5th street immediately south of Crockett's Court, and an automobile was standing directly opposite on the east side of 5th street, at the corner of Ranstead street.

A double team, hauling a sugar wagon, at a slow trot, was coming northward on 5th street in the car track, and the defendant's automobile was back of this wagon, proceeding in the same direction. About 18 feet north of the north line of Crockett's Court some crossing stones were laid from the west curb of 5th street to the car track, and this was a usual and customary place for many pedestrians to cross that thoroughfare. During the last ten years, the defendant's chauffeur had frequently visited the neighborhood of 5th and Chestnut streets, at all hours of the day, and he admitted familiarity with the prevailing conditions at the point of the accident. The custom and traffic regulations of Philadelphia require that, when a driver desires to pass a vehicle in front of him, he must turn to the left, when possible; that is, one passes a conveyance going north on the west side. When approaching Ranstead street the driver of the defendant's automobile decided to pass the vehicle in front of him; instead of keeping in the track, behind this wagon, until he reached a point beyond the place where the west side of 5th street was obstructed by the standing teams, he then and there turned his car to the east, and, after clearing the wagon and team which he desired to pass, swung his machine to the northwest, in order to regain the track; to accomplish this the motor had to go through a space of from 10 to 20 feet between the moving wagon it had just passed and the automobile which was standing on the east side of 5th street at the corner of Ranstead street. The plaintiff's husband was walking eastward across 5th street on the before-mentioned crossing stones; when he reached a point near the middle of the car track, about 12 feet from the west curb of 5th street, the defendant's motor, which had been hidden from his view, suddenly emerged from the east side of the sugar wagon and team, then approaching in the track, and struck and killed him. The chauffeur's seat was so low that he could not see over the horses' heads, and, in consequence, he did not

see Mr. Miller until actually upon him. At the time
of the accident the car was running from 20 to 25 miles
an hour, and gave no warning of its approach; after
coming in contact with Mr. Miller, the machine ran
about 20 feet beyond the point of the accident before
it was stopped, dragging his body under it. Although
the testimony depended upon by the defendant would
show a somewhat different condition of affairs, yet, the
foregoing facts could be found from the evidence relied
upon by the plaintiff.

The case was well presented by the trial judge,
and neither side excepted to his charge; but, on this
appeal, it is most strenuously contended that the plain-
tiff's husband was so plainly guilty of contributory neg-
ligence, in stepping in front of the moving automobile,
that judgment should be entered here for the defendant.
It is true, Mr. Miller was not crossing the street at the
end of a block, still he was doing so at a point which
the defendant's chauffeur knew was customarily, and
very generally, used for that purpose. The presumption
is that Mr. Miller exercised due care according to the
surrounding circumstances; although some of the evi-
dence depended upon by the defendant would indicate
a lack of proper care on the part of the deceased, in not
seeing and avoiding the approaching car, yet the de-
fendant's chauffeur, while stating at one point in his
testimony that Mr. Miller "must have seen me before
I did him," plainly said, more than once, that he could
not see the man he struck until he was actually upon him,
and that the latter could not see him (the driver) until
approximately the same time, saying, "I couldn't see
him for the horses.......he couldn't see me either"—
"I couldn't see him for the horses, and he couldn't see
me"—"I said I couldn't see Mr. Miller until I hit
him, nor he couldn't see me." On the whole, it seems
clear that the issues of contributory negligence on the
part of plaintiff's husband and of the defendant's negli-
gence were both properly submitted to the jury.

The assignments of error are overruled and the judgment is affirmed.